**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**FLORIDA DIGITAL NETWORK, INC.,**

      **Plaintiff,**

-vs-                                                           Case No. 6:06-cv-889-Orl-31JGG

**NORTHERN TELECOM, INC.,**
**n/k/a NORTEL NETWORKS, INC.,**

      **Defendant.**

_____

# ORDER

Plaintiff, Florida Digital Network ("FDN"), has brought this action against the Defendant, Nortel Networks, Inc. ("Nortel"), alleging breach of contract, fraudulent or negligent misrepresentation, deceptive and unfair trade practices, FDN also seeks a declaratory judgment specifying the rights of the parties under their contract. The case comes before the Court on Nortel's Motion to Dismiss (Doc. 11) and FDN's Response thereto (Doc. 16).

**I. Background**[1]

FDN is a provider of residential and business telecommunications services with more than 70,000 customers. (Doc. 2 at 7). Nortel manufactures and sells telecommunications products and offers services associated with such products. (Doc. 2 at 7).

---

[1] The following statement of facts is summarized from the Complaint (Doc. 2).

In 1998, FDN entered into a Purchase Agreement (the "Agreement") with Nortel, under which FDN agreed to purchase multiple DMS[2]-500 switches from Nortel for $2 million each. (Doc. 2 at 9). FDN has since paid over $40.5 million for the purchase and installation of these switches and the use of Nortel software in connection with them. (Doc. 2 at 1).

Over the next seven years, FDN received several invoices from Nortel and paid them in accordance with the Agreement. (Doc. 2 at 9). Also, during this time, Nortel remotely monitored FDN's usage of the DMS switches and software. (Doc. 2 at 14). At no time in these seven years did Nortel indicate that FDN's use was becoming excessive or that extra fees would be charged. (Doc. 2 at 15).

In January 2006, during communications regarding a new contract for upgraded products, Nortel's sales representatives indicated that FDN owed Nortel $3.9 million dollars in "software reconciliation and/or RTU fees."[3] (Doc. 2 at 11-13). FDN never received a bill, invoice or demand from Nortel for this $3.9 million. (Doc. 2 at 3). However, the Nortel representatives suggested that FDN issue a purchase order authorizing payment to Nortel for these back fees. (Doc. 2 at 11-12).

On March 15, 2006 Nortel made a presentation to FDN regarding the purchase of upgraded products. (Doc. 2 at 13). This was the first time FDN saw the $3.9 million figure in writing. (Doc. 2 at 13). The presentation indicated that if FDN agreed to purchase the updated products, Nortel

---

[2]Digital Multiplex System.

[3]"In the telecommunications industry, RTU fees are monies paid to a switch vendor for the license to use the software required to operate and maintain a modern digital switch. The RTU fee charged when a switch is first installed customarily covers all of the features and functionality that exist at the time the switch is installed, regardless of usage level." (Doc. 2 at 2).

would waive the reconciliation fees. (Doc. 2-5 at 13). FDN denies that it owes any RTU fees to Nortel. (Doc. 2 at 4).

## II. Standard of Review

In ruling on a motion to dismiss, this Court must view the complaint in the light most favorable to the plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232 (1974), and must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will take the complaint's allegations as admitted by the Defendant and will liberally construe them in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). The Court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the Plaintiff cannot prove any set of facts that support a claim for relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), the rule to be applied is that, "courts must be mindful that the Federal Rules require only that the complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief." *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (*citing* FED. R. CIV. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). Instead, the complaint need only "contain either direct or inferential allegations respecting all the

material elements necessary to sustain a recovery under some viable legal theory." *Id*. (internal citation and quotation omitted).

In contrast, however, if a party alleges fraud, the circumstances constituting fraud must be stated with particularity, except that malice, intent, knowledge, and state of mind may be stated generally. Fed. R. Civ. P. 9(b) ("Rule 9(b)"). To aid interpretation of the standard under Rule 9(b), the Eleventh Circuit Court of Appeals has explained that:

> The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior. The application of Rule 9(b), however, must not abrogate the concept of notice pleading. Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of fraud.

*United States ex rel. Clausen v. Laboratory Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002).

**III. Legal Analysis**

*A) Count II - Breach of Contract[4]*

FDN alleges that Nortel has breached the Areement by "threatening to make a back-billing demand" for the $3.9 million in RTU fees and also by breaching the duty of good faith and fair dealing. (Doc. 2 at 21-22).

"The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." *American Color Graphics, Inc. v. Brooks Pharmacy, Inc.,* 2006 WL 539543, *3

---

[4]Defendant does not challenge Count I of the complaint, which requests a declaratory judgment of the rights of the parties under the contract.

(M.D.Fla. March 6, 2006).  In order to allege a material breach, the plaintiff must indicate which term of its contractual duties Defendant has failed to perform. While Plaintiff has made some references to sections of the contract that Nortel has allegedly violated, its statement of the facts does not support these allegations.

First, FDN alleges that Nortel has violated section 4.1 of the Agreement, which outlines the procedures for proper billing of FDN. (Doc. 2 at 3).  However, FDN concedes that Nortel has never attempted to bill them for the disputed $3.9 million – only that they have "threatened to make back-billing demands." (Doc. 2 at 16, 21-22).  Even if an actual demand for the $3.9 million would be a breach of the contract, a mere threat to breach a contract is not actionable.

Second, FDN alleges that Nortel has violated section 10.2 of the Agreement, which grants FDN a license to use Nortel software. (Doc. 2 at 11). However, there is no allegation that Nortel has ceased to provide any of the goods or services that it agreed to provide under the contract.  It appears from the complaint that both parties continue to perform their duties under the contract. Nortel has provided the goods and services it agreed to provide, and FDN has paid for those goods and services in response to invoices it received from Nortel.  The mere fact that Nortel has expressed a belief that FDN has been under-billed, and therefore has under-paid for use of their software, does not amount to a breach of contract.

FDN also alleges that Nortel has breached its duty of good faith and fair dealing. (Doc. 2 at 22).  However, a claim for breach of good faith and fair dealing must be coupled with a claim of breach of a specific term of the contract. *American Color,* 2006 WL 539543, *4.  FDN has not alleged any facts to support a claim that Nortel has breached either an express clause or an implied covenant of the Agreement.

Finally, FDN alleges anticipatory repudiation. (Doc. 2 at 21). However, a claim for anticipatory repudiation only "arises when a party unequivocally renounces his duties under a contract prior to the time fixed for his performance." *Rhodes v. Amarillo Hosp. Dist.,* 654 F.2d 1148, 1151 (5th Cir. 1981).[5] FDN has not alleged that Nortel has refused to perform any of its obligations under the contract. Nortel has not refused to provide any products or services to FDN and has not indicated that it will cease to do so in the future. Additionally, time for performance has passed, as both partes have already substantially performed on the contract. Therefore, the claim of anticipatory repudiation is also unsupported by the alleged facts.

*B) Count III: Fraudulent or Negligent Misrepresentation in the Inducement*

A claim of fraudulent misrepresentation must be pled with particularity. Therefore, the complaint must allege that:

> (1) the defendant made a false statement regarding a material fact; (2) the defendant knew that the statement was false when he made it or made the statement knowing he was without knowledge of its truth or falsity; (3) the defendant intended the plaintiff rely and act on the false statement; and (4) the plaintiff justifiably relied on the false statement to his detriment.

*Simon v. Celebration Co.,* 883 So. 2d 826, 832 (Fla. 5th DCA 2004).

In order to satisfy the first element of a fraud complaint, the pleading must identify "specific fact[s] . . . and [state] how they were false." *Simon,* 883 So. 2d at 832. "A mere statement of opinion, belief or expectation although untrue and resting upon no information is not such a false representation as to constitute fraud." *Glass v. Craig*, 91 So. 332, 335 (Fla. 1922).

---

[5] All decisions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent on courts within the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

FDN's complaint lists several alleged "misrepresentations" by Nortel. First, Nortel's indications before and after entering into the Agreement that it would bill FDN in accordance with the agreement. (Doc. 2 at 22). FDN has failed to show that this representation was false. As noted above, FDN admits that it has not received any bill for the $3.9 million it disputes. (Doc. 2 at 3). There is no indication in the complaint that Nortel has billed FDN inappropriately at any time. Additionally, FDN has not specified when, where, how or by whom these representations were made. FDN also does not demonstrate any detrimental reliance on these statements.

Second, Nortel has made representations over the life of the contract concerning the "indebtedness status of FDN's account." (Doc. 2 at 22). Again, FDN fails to demonstrate how these statements were false. In fact, FDN has paid all invoices it has received from Nortel and does not dispute their validity. (Doc. 2 at 9-10). Even if Nortel has since changed its tune and now believes that FDN owes $3.9 million, this is simply a statement of belief with regard to the terms of the contract – not a statement of fact. *See Carefree Vills. Inc. v. Keating Props. Inc.,* 489 So. 2d 99, 102 (Fla. 2d DCA 1986) ("The seller's statement that he thought the lifetime leases could be broken was nothing more than an opinion, upon which no action for misrepresentation could be grounded."). Obviously, both parties have their own opinion of the software licensing agreement, but expressing those opinions is not the same as making a statement of material fact. Again, there are no specifics as to the time, place, or manner in which the statements were made nor any indication of how Plaintiff has detrimentally relied on such statements.

Third, FDN alleges that Nortel has made representations indicating that FDN had either an express or implied license to the software. (Doc. 2 at 23). Again, FDN fails to demonstrate how

these representations were false, who made them, when or where they were made or how FDN has relied on them to its detriment.

Finally, FDN alleges that statements by Nortel that FDN owes software reconciliation and/or RTU fees of $3.9 million for its use of software over the seven years of the contract were misrepresentations. These statements are merely statements of opinion or belief as to the respective rights of Nortel and FDN under the Agreement. Therefore, they are not statements of material fact that may be considered fraudulent misrepresentations under the law.

FDN alleges that, even if these statements are not fraudulent misrepresentations, they constitute negligent misrepresentations. (Doc. 2 at 22). However, negligent misrepresentation also requires that a false statement of material fact be alleged. *Simon,* 883 So. 2d at 832. Because none of the statements cited by FDN have been shown to be false statements of material fact, they cannot be the basis of claims for either fraudulent or negligent misrepresentation.

*C) Count IV: Deceptive and Unfair Trade Practices*

FDN has also alleged that Nortel has violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA" or the "Act"). (Doc. 2 at 24).

> [T]he FDUTPA applies to private causes of action arising from single unfair or deceptive acts in the conduct of any trade or commerce, even if it involves only a single party, a single transaction, or a single contract. An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. . . deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.

*PNR, Inc. v. Beacon Prop. Mgmt.*, 842 So. 2d 773, 777 (Fla. 2003) (internal citations and quotations omitted).

"Most courts construing claims alleging violations of the Federal Deceptive Trade Practices Act or its state counterparts have required the heightened pleading standard requirements of Rule 9(b)." *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002). In light of this trend, claims arising under the FDUTPA must be pled with particularity. *Id.*

FDN's complaint lists no specific facts to support a violation of this act. Instead, it merely states legal conclusions, for example, that Nortel has acted in an unconscionable, unfair and deceptive manner. (Doc. 2 at 25). Although this section of the complaint does incorporate all preceding portions of the complaint, as has been discussed above, those sections demonstrate nothing more than statements of belief by Nortel that FDN owes fees for software reconciliation. (Doc. 2 at 24). Such vague and conclusory allegations are insufficient to support a claim for violation of the FDUTPA. *See Merrill Lynch Bus. Finan. Scrvs., Inc. v. Performance Mach. Sys. U.S.A., Inc.,* 2005 WL 975773, *9 (S.D. Fla. March 4, 2005).

**IV. Conclusion**

For the reasons stated herein, Defendant's Motion to Dismiss is **GRANTED.**  Accordingly, it is

**ORDERED** that Counts II through IV are **DISMISSED.**  The Plaintiff shall have twenty days to replead in a manner consistent with this order.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 30, 2006.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

Unrepresented Party