UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**FLORIDA DIGITAL NETWORK, INC.,**

        **Plaintiff,**

    v.                                    **Case No. 6:06-cv-889-Orl-31JGG**

**NORTHERN TELECOM, INC.,**

        **Defendant.**

_____

**DEFENDANT NORTEL NETWORKS INC.'S ANSWER**

This case arises out of the contractual relationship between Northern Telecom Inc.
n/k/a Nortel Networks Inc. ("Nortel") and Florida Digital Networks, Inc. ("FDN").  The
relationship began on November 20, 1998, when the parties signed the Master Purchase
Agreement ("MPA").  Under the agreement, Nortel agreed to sell telecommunications
equipment ("Nortel Hardware") to FDN.  Nortel also agreed to license its proprietary
software ("Nortel Software") to FDN in exchange for certain "right to use" ("RTU") fees
incorporated into the purchase price contained in the MPA.  The Software is necessary to
support the Nortel Hardware.  The license sets limits on the usage of the Nortel Software.
The MPA also provided for future RTU payments to Nortel, in the event of FDN's increased
usage of the Nortel Software beyond the usage limits contained in the MPA or to operate
hardware not sold to FDN in connection with the original MPA transaction.

During the course of this contractual relationship, FDN exceeded the authorized limits of its software usage.  On information and belief, it also purchased additional, used Nortel Hardware from one or more third parties.  FDN used the Nortel Software, which it had acquired to support the Nortel Hardware it purchased directly from Nortel under the MPA, to run this used hardware.  In exceeding its authorized software usage limits and using the Nortel Software to support additional hardware not purchased from Nortel under the MPA, FDN accrued additional fees payable to Nortel for the use of the Nortel Software.  FDN did not submit a purchase order for this additional usage, as it was required to do under the MPA.

When FDN realized that Nortel knew of FDN's unauthorized usage of Nortel Software, the company sought to prevent Nortel from collecting any additional RTU fees by filing the instant action.  In fact, however, this lawsuit will demonstrate that it is FDN that is infringing Nortel's copyrights, misappropriating its proprietary trade secrets, and breaching the MPA.

Nortel responds to the specific allegations of FDN's Complaint on a paragraph-by-paragraph basis, and counterclaims as follows:

1.      Nortel denies the allegations contained in Paragraph 1 of the Complaint, except Nortel admits that FDN purports to seek a declaratory judgment and supplemental relief.

2.      Nortel is without sufficient knowledge to admit or deny the allegations set forth in this Paragraph 2 of the Complaint, and therefore denies same.

3.      Nortel denies the allegations set forth in Paragraph 3 of the Complaint, except admits that it is a corporation organized under the laws of the State of Delaware, has offices

(though not a principal place of business) in Florida, and conducts business in Florida, including Orange County.

4.      Nortel denies the allegations in Paragraph 4 of the Complaint, except that Nortel admits that Nortel removed FDN's initial complaint from Florida state court to this Court, that subject matter and personal jurisdiction exists, that venue is proper in the United States District Court for the Middle District of Florida, and that Nortel is a foreign corporation doing business in Florida.

5.      Nortel denies the allegations set forth in Paragraph 5 of FDN's Complaint, except Nortel admits that FDN purports to seek a declaratory judgment that FDN does not owe Nortel in excess of $3.9 million, that FDN and Nortel have had a contractual relationship for over seven years, that FDN has paid Nortel for purchases under the MPA, and that FDN has a limited license to use certain Nortel Software granted under the MPA, whose terms speak for themselves.

6.      Nortel denies the allegations set forth in Paragraph 6 of the Complaint, except that Nortel admits it signed a Settlement Agreement and Mutual Release, whose terms speak for themselves.

7.      Nortel denies the allegations set forth in Paragraph 7 of the Complaint, except that it admits that in January 2006, Nortel representatives discussed the issue of unauthorized software usage with representatives of FDN and that prior to January 2006, Nortel had not issued an invoice for $3.9 million in RTU fees.

8.      Nortel denies the allegations set forth in Paragraph 8 of the Complaint.

9.      Nortel denies the allegations set forth in Paragraph 9 of the Complaint, except Nortel admits that portions of Exhibit B appear to be a Nortel sales presentation given to FDN on or about March 15, 2006, whose contents speak for themselves.

10.     Nortel denies the allegations set forth in Paragraph 10 of the Complaint, except that Nortel admits that it has not invoiced FDN for $3.9 million in RTU fees and further admits that FDN purports to seek a judicial declaration of the parties' rights and obligations.

11.     Nortel denies the allegations set forth in Paragraph 11 of the Complaint.

12.     Nortel denies the allegations set forth in Paragraph 12 of the Complaint, except that Nortel admits that Exhibit C is a copy of a "Product Bulletin" found on Nortel's website.

13.     Nortel denies the allegations set forth in Paragraph 13 of the Complaint.

14.     Nortel denies the allegations set forth in Paragraph 14 of the Complaint.

15.     Nortel admits that it is a telecommunications equipment manufacturer, but otherwise denies the remaining allegations in Paragraph 15 of the Complaint.

16.     Nortel denies the allegations in Paragraph 16 of the Complaint, except admits that in 1998 it responded to a request for a proposal from FDN.

17.     Nortel avers that on or about November 20, 1998, Nortel and FDN entered into a Purchase Agreement pursuant to which FDN purchased multiple DMS-500 switches from Nortel.  The terms of the Master Purchase Agreement speak for themselves.  Nortel denies the remaining allegations in Paragraph 17 of the Complaint.

18.     Nortel denies the allegations in Paragraph 18 of the Complaint, except admits that FDN has made certain payments under the MPA.

19.     Nortel denies the allegations in Paragraph 19 of the Complaint, except admits that FDN has made purchases under the MPA after its execution.

20.     Nortel admits that in September 2002 it entered a Settlement Agreement and Mutual Release with FDN, but denies the remaining allegations in Paragraph 20 of the Complaint.

21.     Nortel denies the allegations of Paragraph 21 of the Complaint, except denies knowledge or information sufficient to form a belief as to FDN's capabilities or business plans.

22.     Nortel denies the allegations of Paragraph 22 of the Complaint, except denies knowledge or information sufficient to form a belief as to FDN's knowledge or conduct.

23.     Nortel admits that the MPA contains a choice of law provision applying Texas law, but denies the remaining allegations in Paragraph 23 of the Complaint.

24.     Nortel denies the allegations contained in Paragraph 24 of the Complaint, except admits Nortel representatives discussed with FDN its unauthorized use of Nortel Software.

25.     Nortel denies the allegations in Paragraph 25 of the Complaint, except admits that the MPA contains Section 10.2, whose terms speak for themselves.

26.     Nortel admits that FDN purchased DMS-500 switches from Mpower Communications.  It denies the remaining allegations of Paragraph 26 of the Complaint.

27.     Nortel denies the allegations of Paragraph 27 of the Complaint.

28.     Nortel admits that in the same period since January 2006, Nortel has not invoiced FDN for $3.9 million.  Nortel further admits that portions of Exhibit B appear to be a sales presentation for additional and/or upgraded product purchases given to FDN by Nortel representatives on or about March 15, 2006, but denies the remaining allegations of Paragraph 28 of the Complaint.

29.     Nortel denies the allegations in Paragraph 29 of the Complaint.

30.     Nortel denies the allegations in Paragraph 30 of the Complaint, except admits that the MPA contains an Article 12.5, whose terms speak for themselves.

31.     Nortel denies the allegations in Paragraph 31 of the Complaint.

32.     Nortel denies the allegations in Paragraph 32 of the Complaint.

33.     Nortel denies the allegations in Paragraph 33 of the Complaint.

34.     Nortel denies the allegations in Paragraph 34 of the Complaint.

35.     Nortel denies the allegations in Paragraph 35 of the Complaint.

36.     Nortel denies the allegations in Paragraph 36 of the Complaint.

37.     Nortel denies the allegations in Paragraph 37 of the Complaint, except admits that section 4.5 of the MPA contains a provision allowing Nortel's recovery of costs and legal fees, admits that FDN has apparently retained Lowndes, Drosdick, Doster, Kantor & Reed, P.A. as its counsel, and denies knowledge or information sufficient to form a belief as to the reasonableness of the fee for their services.

## COUNT I – DECLARATORY JUDGMENT

38.     Nortel responds to Paragraph 38 of the Complaint by incorporating herein Paragraphs 1 through 37 of its Answer by reference as if fully set forth herein.

39.     Nortel denies the allegations in Paragraph 39 of the Complaint, except admits that FDN purports to bring a cause of action for declaratory relief.

40.     Nortel denies the allegations in Paragraph 40 of the Complaint, except admits that the rights and obligations of FDN and Nortel are governed by the MPA and applicable and governing law.

41.     Nortel denies the allegations in Paragraph 41 of the Complaint.

42.     Nortel denies the allegations in Paragraph 42 of the Complaint.

43.     Nortel denies the allegations in Paragraph 43 of the Complaint.

44.     Nortel denies the allegations in Paragraph 44 of the Complaint.

45.     Nortel denies the allegations in Paragraph 45 of the Complaint.

46.     Nortel denies the allegations in Paragraph 46 of the Complaint, except admits that it has not invoiced FDN for $3.9 million in "software reconciliation and/or RTU fees" and further admits that the MPA has a Section 10.2, whose terms speak for themselves.

47.     Nortel denies the allegations in Paragraph 47 of the Complaint.

48.     Nortel denies the allegations in Paragraph 48 of the Complaint.

49.     Nortel denies the allegations in Paragraph 49 of the Complaint.

50.     Nortel denies the allegations in Paragraph 50 of the Complaint.

51.     Nortel denies the allegations in Paragraph 51 of the Complaint and further denies that FDN is entitled to any of the relief requested.

52.     Nortel denies the allegations in Paragraph 52 of the Complaint and further denies that FDN is entitled to any of the relief requested.

53.     Nortel denies the allegations in Paragraph 53 of the Complaint, except that it admits that FDN purports to demand a jury trial.

## AFFIRMATIVE DEFENSES

By and for its affirmative defenses, Nortel states as follows:

### FIRST AFFIRMATIVE DEFENSE

1.      FDN has failed to state a claim against Nortel upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

2.      FDN has failed to plead its claims with the requisite particularity.

### THIRD AFFIRMATIVE DEFENSE

3.      FDN's claims are barred by the equitable doctrines of laches, waiver or estoppel.

### FOURTH AFFIRMATIVE DEFENSE

4.      To the extent that FDN attempts to seek equitable relief, it is not entitled to such relief because it has an adequate remedy at law.

### FIFTH AFFIRMATIVE DEFENSE

5.      FDN has engaged in acts constituting willful infringement and misappropriation of Nortel's copyrights and trade secrets.  Accordingly, FDN is barred from obtaining equitable relief from this Court by the doctrine of unclean hands.

### SIXTH AFFIRMATIVE DEFENSE

6.      If FDN was injured or damaged in any way, the injuries and damages were proximately caused and/or contributed to solely by the acts, wrongs, or omissions of FDN or other persons, entities, forces, or things over which Nortel had no control and for which Nortel is not responsible.  Such acts and omissions constitute an independent and intervening

cause which superseded any alleged legal wrong of Nortel and constitute the sole, proximate and legal cause of the injuries and damages, if any, alleged by FDN.

## SEVENTH AFFIRMATIVE DEFENSE

7.      FDN's damages, if any, may be barred and/or diminished by the failure of FDN to mitigate its damages and the doctrine of avoidable consequences.

## EIGHTH AFFIRMATIVE DEFENSE

8.      FDN committed contributory and/or comparative negligence and FDN's recovery should therefore be barred or diminished in proportion to its contributory and/or comparative negligence.

## NINTH AFFIRMATIVE DEFENSE

9.      FDN's damages, if any, may be barred by the economic loss rule because FDN seeks to recover damages in tort for matters arising from the contract.

## TENTH AFFIRMATIVE DEFENSE

10.      Nortel reserves the right to raise additional affirmative and other defenses as they are discovered or otherwise become available.

## COUNTERCLAIMS

Counterclaim-Plaintiff Nortel Networks Inc. ("Nortel") asserts the following counterclaims against Counterclaim-Defendant Florida Digital Network, Inc. ("FDN"). Nortel claims and avers as follows:

## THE PARTIES

1.      Nortel is a corporation organized under the laws of the State of Delaware, and it has a principal place of business located in Richardson, Texas.  Nortel designs, develops, manufactures, and sells network and communication products and services, and licenses software for use in operating its hardware.

2.      On information and belief, FDN is a public Delaware corporation having a

principal place of business located at 2301 Lucien Way, Maitland, Florida 32751. On

information and belief, FDN provides business and residential telecommunications services

to customers in the state of Florida and Atlanta, Georgia and has been conducting business in

those locations since 1998.


**JURISDICTION AND VENUE**

3.      This Court has subject matter jurisdiction pursuant to 17 U.S.C. § § 101 et

seq. (the "Copyright Act") and 28 U.S.C. § § 1331, 1338(a) and 1367.

4.      FDN is subject to personal jurisdiction of this Court due to the fact that its

headquarters and place of operation are located in Maitland, Florida.  Software at issue in this

litigation is located and was illegally copied and/or used in, among other places, Orlando,

Jacksonville, Fort Lauderdale, and Tampa, Florida.  FDN has also filed a complaint against

Nortel for declaratory judgment in Orlando, Florida, to which these counterclaims are

responsive.  Thus, actions relevant to these Counterclaims occurred in the State of Florida.

5.      Venue is proper in the Middle District of Florida, Orlando Division, pursuant

to 28 U.S.C. § 1391 (b) & (c) and 28 U.S.C. § 1400(a).

**FACTUAL ALLEGATIONS**

6.      In or about November 1998, Nortel and FDN entered into a Master Purchase

Agreement ("MPA"), an agreement intended to lay foundation for a long term, mutually-

beneficial relationship between the parties.

7.     The MPA provides that FDN would purchase certain, specific hardware and license certain related software from Nortel that when installed would constitute the "Initial System" for FDN's communications network.

8.     The MPA also governed future purchases of products, services, and licenses from Nortel in the event that FDN needed to support, upgrade, or expand its communications equipment.

9.     Because of the copyrights and trade secrets associated with Nortel's software, the MPA contains a license agreement that, in exchange for FDN's payment of specified right-to-use ("RTU") fees, grants FDN a limited, personal, non-exclusive right to use Nortel's copyrighted and proprietary software (the "Licensed Software").

10.    The license agreement in the MPA does not permit FDN to use the Licensed Software with any hardware other than the Initial System hardware with which the Licensed Software was furnished.

11.    The MPA makes this clear by stating in § 10.2 that "[u]pon Company's [i.e., FDN's] payment to Nortel of the applicable fees with respect to any Software furnished to Company pursuant to this Agreement, Nortel hereby grants to Company, subject to the applicable terms and conditions of this Article 10, a personal, non-exclusive, right to use the Licensed Software furnished to Company, *but only in conjunction with Company's use of the Hardware or the Documentation with respect to which such Licensed Software was furnished*."  (Emphasis added).

12.    As a consequence, FDN may not use the Licensed Software with any hardware purchased subsequent to the Initial System hardware purchased in November 1998

11

without receiving authorization from Nortel to use the Licensed Software and without Nortel's receiving consideration for that authorization.  FDN cannot obtain the right to use software from a source other than Nortel.

13.     Furthermore, the MPA set specific usage limits on various Licensed Software. Any incremental use of the Licensed Software beyond the specified usage level required the payment of an additional incremental RTU fee.  Thus, by way of example, section III.2.1 of Attachment 1 to Exhibit A to the MPA states:  "Company [i.e., FDN] has a software license for the following software features for the DMS-500 Initial System set forth in Part I, Section I.1.2. on a limited basis that may be exercised for only the limited number of units licensed. Company may purchase additional optional units over and above the initial number of units licensed for the prices set forth in Part V of this Attachment 1."

14.     The price for the Initial System hardware, including the appropriate software RTU fee, was determined in accordance with the specified capacity of the network.  If FDN had ordered a network with more capacity, FDN would have been required to pay a higher software RTU fee.  Indeed, it is the norm in the telecommunications industry that software RTU fees are based on the capacity of the network.

15.     As a general matter, Nortel retains ownership of its software, licenses it to its customers, and prohibits the sale or transfer of that license without Nortel's authorization. Therefore, to the extent FDN acquired Nortel's software from a source other than Nortel, it would still need Nortel's authorization to use the software and owe Nortel consideration for the right to use the software.

16.     Nortel considers and treats its software as confidential, proprietary and trade secret information.  Indeed, under the terms of the MPA signed by both parties, the Licensed Software at all times remains the property of and a proprietary trade secret of Nortel.  The MPA specifically states that:  "[a]ll Software supplied by Nortel under or in implementation of this Agreement *shall be treated by Company as the exclusive property, and as proprietary and a trade secret, of Nortel* and/or its suppliers . . . ."  MPA at § 10.3 (emphasis added).

17.     On information and belief, sometime after purchasing an Initial System from Nortel, FDN purchased additional, used Nortel Hardware (the "Additional Used Hardware") from a third party.  FDN installed this Additional Used Hardware as a means of expanding the capacity of its Initial System.  FDN used the Licensed Software obtained from Nortel with the Initial System to operate the Additional Used Hardware.  Nortel has never authorized FDN's use of the Licensed Software to operate the Additional Used Hardware.

18.     On information and belief, FDN also sought to use Licensed Software beyond the usage levels authorized by the MPA.  It had no authorization from Nortel allowing it to do so.

19.     FDN never informed Nortel of its unauthorized use of the license software through the placement of a purchase order.  Indeed, FDN initially sought to conceal its unauthorized use of the License Software.  Eventually and belatedly, however, representatives of FDN revealed certain unauthorized usage in discussions with Nortel representatives.  Thereafter, Nortel presented FDN with a series of different proposals for ways for FDN to buy-out a software RTU obligation.  Though FDN professed interest in such a business resolution and promised to compensate Nortel for unpaid RTUs, FDN would

not commit to Nortel proposals, choosing instead to prolong negotiations.  During the course of the last round of these negotiations, FDN abruptly filed this litigation against Nortel seeking a declaration that it owed no RTU fees.

20.     FDN has not paid Nortel for the right to use the Licensed Software in conjunction with the Additional Used Hardware or beyond the usage levels permitted under the MPA.

### FIRST COUNTERCLAIM:  COPYRIGHT INFRINGEMENT

21.     Paragraphs 1 through 20 of this Countercomplaint are incorporated by reference as if fully set forth herein.

22.     Nortel is the exclusive licensee of copyrights to Nortel Software that FDN has in its possession, and Nortel has standing to enforce the copyrights pursuant to a written agreement with the owner of the copyrights, Nortel's parent corporation Nortel Networks Limited.

23.     Copyrights for Nortel Software used by FDN are registered with the United States Copyright office.

24.     As described above, FDN has access to the copyrighted Licensed Software, which is the property of Nortel, through a license agreement contained in the MPA. However, that license grant is limited and is conditioned upon FDN's use of the Licensed Software only in conjunction with the hardware with which the Licensed Software was furnished.

25.     On information and belief, FDN has copied and used the Licensed Software on hardware that was not provided by Nortel in conjunction with the software license and for hardware for which usage of the Licensed Software was not authorized.  On information and

belief, FDN officials located in Florida and elsewhere in the United States were directly involved in and authorized the copying and use of the Licensed Software.

26.     By doing so, FDN has gone beyond the scope of its license to use the Licensed Software and infringed and/or contributed to the infringement of Nortel's copyright.

27.     FDN's unauthorized use of the Licensed Software, including unauthorized reproduction when loading the Licensed Software to operate the Additional Used Hardware or other hardware not within the usage levels authorized by Nortel, infringes upon Nortel's valid copyrights.

28.     The natural and foreseeable result of FDN's wrongful conduct has been to deprive Nortel of the benefit of collecting software RTU fees.

29.     FDN has been unjustly enriched by its acts of copyright infringement.

30.     Nortel is entitled to a full and accurate accounting by FDN of all its profits generated through its infringement of the Licensed Software.

31.     Nortel is entitled to recover the actual and statutory damages it has suffered as a result of FDN's infringement, as well as all profits realized by FDN which are attributable to its infringement, as provided for in 17 U.S.C. § 504(c).

32.     Nortel has been irreparably harmed as a result of FDN's infringement.

33.     Nortel is entitled to an order of this Court removing the Licensed Software from FDN's computers, impounding it, and upon entry of final judgment, returning to Nortel or destroying all infringing products in FDN's possession, custody or control.

34.     Nortel is also entitled to recover its attorneys' fees caused by FDN's

infringement, as provided for in 17 U.S.C. § 505.

**SECOND COUNTERCLAIM:  MISAPPROPRIATION OF TRADE SECRET**

35.     Paragraphs 1 through 20 of this Countercomplaint are incorporated by

reference as if fully set forth herein.

36.     Nortel possesses a trade secret with respect to its proprietary Licensed

Software.

37.     Nortel's Licensed Software has never been published, and is not generally

known within its industry.

38.     The Licensed Software has been subject to reasonable measures to protect it

from disclosure.  The Licensed Software is provided to licensees and prospective licensees

only pursuant to non-disclosure agreements.  It further established additional usage limits on

various Licensed Software.

39.     As described above, FDN obtained the Licensed Software through a license

agreement contained in the MPA.  The license agreement limits FDN to use the Licensed

Software only in conjunction with the hardware with which it was furnished.  *See* MPA at §

10.3.

40.     Because of the extensive measures taken by Nortel to protect the trade secrets

inherent in the Nortel Licensed Software, those trade secrets are not readily ascertainable by

competitors or the general public.

41.     Nortel has spent millions of dollars and many hundreds, if not thousands, of

hours in development costs in order to create the Licensed Software.

42.     The Licensed Software has actual and potential economic value in that it generates significant RTU fees, as well as an ongoing competitive advantage to Nortel.

43.     As a result of the terms of the license agreement, FDN knew that it had a duty not to misappropriate Nortel's Licensed Software for FDN's own benefit.

44.     On information and belief, FDN has used the Licensed Software on hardware purchased from sources other than Nortel and on hardware for which usage of the Licensed Software was not authorized by Nortel.

45.     By doing so, FDN has used the Licensed Software without Nortel's permission, constituting misappropriation of trade secrets pursuant to F.S.A. § 688.001, *et seq*.

46.     Nortel has never granted FDN the right to transfer, use, disclose, copy, distribute, display, license, or sell Nortel's Licensed Software.

47.     On information and belief, FDN has used the Nortel Licensed Software without Nortel's permission, constituting misappropriation of trade secrets.

48.     Any and all use of the Licensed Software by FDN beyond the scope granted in the license agreement or disclosures to unlicensed third parties is unauthorized and without the consent of Nortel.

49.     On information or belief, FDN knew that it had a duty not to misappropriate Nortel Licensed Software.  FDN knew or must have known through widespread and extensive business dealings by Nortel, that Nortel treats its software as proprietary and a trade secret.

50.     The natural and foreseeable result of FDN's wrongful conduct has been to damage Nortel by depriving it of the benefit of collecting software RTU fees.

51.     FDN has been unjustly enriched by its acts of misappropriating trade secrets.

52.     Nortel is entitled to recover its actual loss caused by FDN's misappropriation, as well as any unjust enrichment that it has received.

53.     Nortel is also entitled to recover its attorneys' fees caused by FDN's willful and malicious misappropriation, as well as exemplary damages in order to punish and deter FDN for its willful and malicious misappropriation.

**THIRD COUNTERCLAIM:  BREACH OF CONTRACT**

54.     Paragraphs 1 through 20 of this Counatercomplaint are incorporated by reference as if fully set forth herein.

55.     As described above, Nortel fully performed all of its obligations under the MPA.

56.     FDN materially breached the MPA in a number of ways.  First, FDN is required to treat all software supplied by Nortel as the exclusive property, and as proprietary and a trade secret, of Nortel.  By using Nortel's software in the operation of the hardware and equipment not covered in the license granted under the MPA, FDN has breached its obligations under the MPA.

57.     Furthermore, FDN has not submitted an order for the Licensed Software it purchased from sources other than Nortel that it is using, as required under the MPA.

58.     As the proximate result of FDN's breach of the various provisions of the MPA, Nortel has been damaged and is entitled to damages, as well as attorneys' fees caused by FDN's breach as is provided for in § 4.5 in the MPA.

**PRAYER FOR RELIEF**

WHEREFORE, Counterclaim-Plaintiff Nortel prays:

(a)     That judgment be entered for Nortel and against FDN;

(b)     That FDN be required to account for all revenues, profits and advantages resulting from its infringement of Nortel's copyrights in the Licensed Software;

(c)     That actual and statutory damages be awarded to Nortel in an amount to be proven at trial, and for any of FDN's profits attributable to the infringement of Nortel's copyrights;

(d)     That Nortel be awarded its actual damages according to proof, and unjust enrichment attributable to FDN's misappropriation of Nortel's trade secrets;

(e)     That Nortel recover exemplary damages for FDN's willful and malicious misappropriation of trade secrets;

(f)     That Nortel be awarded damages for FDN's breach of the MPA;

(g)     That Nortel recover its attorneys' fees caused by FDN's infringement of Nortel's copyrights, willful and malicious misappropriation of trade secrets, and breach of the MPA;

(h)     That FDN be enjoined from unlawfully reproducing, distributing, displaying, using, or disclosing the Nortel Licensed Software;

(i)     That all infringing products in FDN's possession, custody, or control be removed from FDN's switches, be impounded, and be returned to Nortel or destroyed; and

     (j)     That such other and further relief be granted as the Court may deem just and proper.

                                       Respectfully submitted,

                                       s/David M. Schnorrenberg

David M. Schnorrenberg
Trial Counsel (admitted *pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004
Telephone:  (202) 624-2500
Facsimile:  (202) 628-5116
dschnorrenberg@crowell.com

                 -and-

William C. Guerrant (Bar No. 516058)
Lara Tibbals (Bar No. 129054)
HILL, WARD & HENDERSON, PA
101 East Kennedy Boulevard, Suite 3700
Tampa, FL  33602
Telephone:  (813) 221-3900
Facsimile:  (813) 221-2900
E-mail:  wguerrant@hwhlaw.com
E-mail:  ltibbals@hwhlaw.com

Counsel for Defendant Nortel Networks Inc.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 3, 2006, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system, which will send a notice of

electronic filing to the following:

> T. Todd Pittenger, Esq.
> Lowndes, Drosdick, Doster, Kantor & Reed, P.A.
> Post Office Box 2809
> Orlando, Florida 32802
> todd.pittenger@lowndes-law.com
>
> Ava Doppelt, Esq.
> Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A.
> 255 South Orange Avenue, Suite 1401
> Orlando, Florida 32801
> adoppelt@addmg.com
>
> Counsel for Plaintiff

> s/David M. Schnorrenberg
> David M. Schnorrenberg
> CROWELL & MORING LLP
> 1001 Pennsylvania Avenue, N.W.
> Washington, DC 20004
> Telephone: (202) 624-2500
> Facsimile: (202) 628-5116
> dschnorrenberg@crowell.com