**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**FLORIDA DIGITAL NETWORK, INC.,**

        **Plaintiff,**

-vs-                                            Case No. 6:06-cv-889-Orl-31JGG

**NORTHERN TELECOM, INC.,**
**n/k/a NORTEL NETWORKS, INC.,**

        **Defendant.**

**ORDER**

On December 11, 2006, Defendant filed a Motion to Dismiss Counts II and III of Plaintiff's Amended Complaint (Doc. 37). On January 25, 2007, the parties filed a Joint Motion to Dismiss With Prejudice Count III of Plaintiff's Amended Complaint (Doc. 41), which this Court granted the next day (Doc. 42). Therefore, the Motion to Dismiss Count II is still outstanding, and Plaintiff filed a Response thereto (Doc. 44) on January 31, 2007.

**I. Background**

FDN is a provider of residential and business telecommunications services with more than 70,000 customers. (Doc. 36 at 1). Nortel manufactures and sells telecommunications products and offers services associated with such products. (Doc. 36 at 2).

In 1998, FDN entered into a Purchase Agreement (the "Agreement") with Nortel, under which FDN agreed to purchase multiple DMS[1]-500 switches from Nortel for $2 million each.

---

[1] Digital Multiplex System.

(Doc. 36 at 3). FDN has since paid over $40.5 million for the purchase and installation of these switches and the use of Nortel software in connection with them. (Doc. 36 at 3).

Over the next seven years, FDN received several invoices from Nortel and paid them in accordance with the Agreement. (Doc. 36 at 3). Also, during this time, Nortel remotely monitored FDN's usage of the DMS switches and software. (Doc. 36 at 4). At no time in these seven years did Nortel indicate that FDN's use was becoming excessive or that extra fees would be charged. (Doc. 36 at 4).

In January 2006, during communications regarding a new contract for upgraded products, Nortel's sales representatives indicated that FDN owed Nortel $3.9 million dollars in "software reconciliation and/or RTU fees."[2] (Doc. 36 at 4). FDN never received a bill, invoice or demand from Nortel for this $3.9 million. (Doc. 36 at 4). However, the Nortel representatives suggested that FDN issue a purchase order authorizing payment to Nortel for these back fees. (Doc. 36 at 4).

On March 15, 2006 Nortel made a presentation to FDN regarding the purchase of upgraded products. (Doc. 36 at 4). This was the first time FDN saw the $3.9 million figure in writing. (Doc. 36 at 4). The presentation indicated that if FDN agreed to purchase the updated products, Nortel would waive the reconciliation fees. (Doc. 2-5 at 13, 36 at 4). FDN denies that it owes any RTU fees to Nortel. (Doc. 36 at 4).

---

[2] "In the telecommunications industry, RTU fees are monies paid to a switch vendor for the license to use the software required to operate and maintain a modern digital switch. The RTU fee charged when a switch is first installed customarily covers all of the features and functionality that exist at the time the switch is installed, regardless of usage level." (Doc. 36 at 3-4, n5).

**II. Standard of Review**

In ruling on a motion to dismiss, this Court must view the complaint in the light most favorable to the plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232 (1974), and must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will take the complaint's allegations as admitted by the Defendant and will liberally construe them in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). The Court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the Plaintiff cannot prove any set of facts that support a claim for relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). In reviewing a complaint on a motion to dismiss, "courts must be mindful that the Federal Rules require only that the complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief." *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (*citing* FED. R. CIV. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). Instead, the complaint need only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Id*. (internal citation and quotation omitted).

**III. Legal Analysis**

Count II of FDN's Amended Complaint (Doc. 36) alleges a breach of contract by Nortel. "The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." *American Color Graphics, Inc., v. Brooks Pharmacy Inc.,* 2006 WL 539543, *3 (M.D. Fla. March 6, 2006).[3] Nortel argues that FDN has failed to effectively allege a breach of contract in Count II.

*1. FDN's allegations*

In the Amended Complaint FDN alleges that Nortel has breached the Agreement in four ways: (a) making extortionate and back-billing demands for payment of $3.9 million that is not due under the Agreement; (b) bringing premature and unauthorized counterclaims for copyright infringement, misappropriation of trade secrets, and breach of the Agreement without first complying with sections 4.4, 4.5, and 12.2 of the Agreement; (c) incorporating in the "software reconciliation and/or RTU fees" amounts that go back further than two (2) years; and (d) including in the "software reconciliation and/or RTU fees" amounts attributable to secondary market purchases by FDN. (Doc. 36 at 28).

With respect to the alleged breaches enumerated in (a), (c), and (d), this Court has already held that "a mere threat to breach a contract is not actionable." (See this Court's order of August 30, 2006, filed as Doc. 19 at 5). Because Nortel has never formally invoiced FDN for the $3.9 million, these allegations do not amount to a breach of the Agreement.

---

[3] Nortel argues that Texas law applies in this action (Doc. 37 at 3 n.2); however, the Court is not required to decide that issue here because the elements of breach of contract are virtually identical in both Florida and Texas. *See e.g., Apache Corp. v. Dynegy Midstream Services, Ltd. Partnership,* 2006 WL 3511858 (Tex App. 14th Dist. December 7, 2006)

Regarding the alleged breach described in (b) of the Amended Complaint (Doc. 36 at 28), sections 4.4 and 4.5 of the Agreement do not support FDN's breach of contract allegations because these sections are merely a declaration of Nortel's rights to charge FDN interest in the event FDN does not pay an invoice in full within a thirty (30) day period. (Doc. 36-2 at 13).

Section 12.2 of the Agreement provides:

> In the event of any material breach of this Agreement which shall continue for thirty (30) or more days after written notice of such breach...shall have been given to the breaching party by the aggrieved party, the aggrieved party shall be entitled at its option to avail itself of any and all remedies available at law or equity, except as otherwise limited in this Agreement.

(Doc. 36-2 at 26). FDN alleges that Nortel's counterclaims for breach of contract, copyright infringement, and misappropriation of trade secrets amount to a breach of section 12.2 of the Agreement.

*1. Nortel's Counterclaims*

Nortel asserts three counterclaims against FDN: (1) Copyright infringement; (2) Misappropriation of trade secrets; and (3) Breach of contract (Doc. 27 at 14-18).

Counterclaims one and two, for copyright infringement and misappropriation of trade secrets, are tort claims. The commission of a tort is not a "material breach of [the] Agreement," and therefore, section 12.2 of the Agreement does not apply to these counts.

In counterclaim three, Nortel alleges that FDN is exceeding the scope of its license under sections 10.2 and 10.3 of the Agreement and that FDN failed to submit an order for software purchased from other sources, also in violation of sections 10.2 and 10.3 of the Agreement. (Doc. 27 at 11, 13).

FDN's allegation that Nortel has breached section 12.2 of the Agreement by filing a breach of contract counterclaim fails to state a viable claim.  Section 12.2 of the Agreement is what is commonly referred to as a "cure" provision because the breaching party has thirty (30) days after notice to cure the alleged breach before an action can be brought against the breaching party.  Failure to give notice and opportunity to cure is an affirmative defense, not the basis for a breach of contract claim.  *See, e.g., Nat'l Coalition for Students with Disabilities v. Bush,* 173 F. Supp.2d 1272, 1280-81 (N.D. Fla. 2001).  Thus, Nortel's alleged failure to give FDN an opportunity to cure its breach would be an affirmative defense to Nortel's counterclaim, not a claim itself.

**IV.  Conclusion**

Accordingly, it is

**ORDERED** that Defendant's Motion to Dismiss (Doc. 37) is **GRANTED**.  Count II of Plaintiff's Amended Complaint is **DISMISSED** with prejudice.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on February 22, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party